IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UBS BANK USA,<br><br>                    **Plaintiff,**<br>**vs.**<br><br>ANDRE HAWIT,<br>                    **Defendant.** | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No.  2:09CV32 DAK |

This matter is before the court on Plaintiff UBS Bank USA's ("UBS Bank" or the

"Bank") Motion to Dismiss Defendant Andre Hawit's ("Mr. Hawit" or "Plaintiff") Counterclaim.

A hearing was held on November 10, 2009.  At the hearing, Plaintiff was represented by

Anthony J. Borelli and Jennifer R. Eshelman.  Defendant was represented by David K. Heinhold

and Brent R. Baker   The court has carefully considered the memoranda and other materials

submitted by the parties.  Since taking the matter under advisement, the court has further

considered the law and facts relating to this motion and now being fully advised, the court

renders the following Order.

## I.  BACKGROUND

Plaintiff UBS Bank is a federally regulated industrial bank with its principal place of

business in Salt Lake City.  Mr. Hawit is a resident of California.  UBS Financial Services, Inc.

("UBS Financial Services") is a securities brokerage firm incorporated in Delaware.  It is a

separate and distinct corporate entity from UBS Bank, and it is not a party to this action.

Since 2003, Mr. Hawit has been a client of UBS Financial Services, investing as much as

$23 million after a broker allegedly convinced him that the firm could offer him better overall

financial management than the competition.  Pursuant to his brokerage account agreements with

UBS Financial Services, Mr. Hawit is obligated to arbitrate any and all disputes with UBS

Financial Services.[1]

On or about June 7, 2007, Mr. Hawit entered into a Credit Line Agreement with UBS

Bank, pursuant to which he requested and received certain loans (the "Loans") from the Bank.

Mr. Hawit signed a Credit Line Agreement with UBS Bank, which provides that the loans were

subject to collateral requirements attached to Mr. Hawit's Financial Services account and require

that a minimum value be maintained.   The Credit Line Agreement enabled the Bank to demand,

at any time and in its sole and absolute discretion, that the Loans be immediately re-paid in full.

The Credit Line Agreement also expressly provides, in bold and capital letters, that any and all

lawsuits between Mr. Hawit and the Bank shall be filed and litigated exclusively in the United

States District Court for the District of Utah or in the courts of the State of Utah:

> **ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF
> OR RELATED TO THIS AGREEMENT OR ANY
> TRANSACTION CONTEMPLATED BY THIS
> AGREEMENT OR ANY JUDGMENT ENTERED BY ANY
> COURT REGARDING THIS AGREEMENT OR THE
> TRANSACTIONS CONTEMPLATED BY THIS
> AGREEMENT WILL BE BROUGHT AND MAINTAINED
> EXCLUSIVELY IN THE THIRD JUDICIAL DISTRICT
> COURT FOR THE STATE OF UTAH OR IN THE UNITED
> STATES DISTRICT COURT FOR THE STATE OF UTAH.**

---

[1]  After UBS Bank filed its Complaint against Mr. Hawit in this court, Mr. Hawit initiated
an arbitration proceeding against UBS Financial Services before the Financial Industry
Regulatory Authority ("FINRA").

Furthermore, the Credit Line Agreement expressly provides that any arbitration between

Mr. Hawit and UBS Financial Services shall not provide a basis to stay an action in this court

between Hawit and UBS Bank:

> Any arbitration proceeding between the Borrower (or any other
> Loan Party) and the Securities Intermediary,[2] regardless of whether
> or not based on circumstances related to any court proceeding
> between the Bank and Borrower (or other Loan Party), will not
> provide a basis for any stay of the court proceeding.

In 2007, Mr. Hawit accessed the UBS Bank line of credit to purchase real estate.  At

various times thereafter, Mr. Hawit's collateral account value dropped below the minimum

standard and he wired money to satisfy the Bank's requirements.  In October 2008, UBS Bank

notified Mr. Hawit that his financial services account had again declined to a value below the

collateral requirement and that he was required to send additional funds.  Mr. Hawit did not send

the requested funds, and UBS Bank began to liquidate Hawit's collateral in a manner that Mr.

Hawit deems reckless.

On January 15, 2009, UBS Bank filed a Complaint alleging, among other things, that Mr.

Hawit failed and refused to pay $531,662 that was due and owing on the Loans in accordance

with the Credit Line Agreement.   The Complaint contained counts for breach of contract, breach

of the covenant of good faith and fair dealing, unjust enrichment and account stated.

**THIS COURT'S PREVIOUS ORDER**

On or about March 20, 2009, Mr. Hawit filed a motion to dismiss or stay UBS Bank's

---

[2] "Securities Intermediary" is expressly defined to include Financial Services.

lawsuit against him, pending the outcome of his arbitration against UBS Financial Services.  Mr.

Hawit argued that his later-filed arbitration should take precedence over the Bank's claims.

In its Memorandum Decision and Order, dated July 31, 2009, this court denied Mr. Hawit's

motion in its entirety.  In denying the motion, the court held:

> The Court finds no merit to Hawit's arguments. UBS Bank and UBS Financial are
> two separate entities, and Hawit signed different contracts with each entity.
> Therefore, Hawit's prediction that if he prevails in arbitration then he will not owe
> the Bank is incorrect. UBS Bank is not a party to the pending arbitration between
> Hawit and UBS Financial.  If the arbitration proceeding results in a finding that
> UBS Financial is liable for Hawit defaulting on the terms of his loan to UBS
> Bank, then UBS Financial will be responsible for compensating Hawit for the
> resulting costs; Hawit's own obligations to the Bank will remain unchanged.

This court also found that Mr. Hawit's request for a stay was specifically addressed by the

Credit Line Agreement, which expressly provides that an arbitration between UBS Financial

Services and Mr. Hawit "will not provide a basis for any stay of the court proceedings."  The

court held that this provision was "unambiguous and conspicuously located within the contract."

The court also expressly rejected Mr. Hawit's argument that the FINRA arbitration and this case

involve related issues:

> The FINRA arbitration involves Hawit's claims against UBS Financial in regard
> to brokerage services and the proceedings in this court concern contractual
> obligations between Hawit and UBS Bank steming from a line of credit. As such,
> any claims resolved in arbitration will have no effect on the outcome of the
> proceedings in this court . . .

## FINRA ARBITRATION PANEL

In addition, the FINRA arbitration Statement of Claim that Mr. Hawit filed against UBS

Financial Services contained claims purportedly arising from the conduct of UBS Bank (not UBS

Financial Services).   On or about June 17, 2009, UBS Financial moved to dismiss all claims

pending in the FINRA arbitration regarding the conduct of UBS Bank pursuant to the terms of

the parties' express agreements.

On August 29, 2009, the FINRA Arbitration Panel entered an order finding that, in his

Statement of Claim, Mr. Hawit had improperly "commingled dealings and conflicts he had with

UBS Bank USA and with UBS Financial Services, Inc."   The Panel further held that "UBS

Financial Services, Inc. was not associated with the conduct of UBS Bank."   Accordingly,

allegations regarding the borrower-lender relationship between the Bank and Mr. Hawit were

summarily dismissed from the FINRA arbitration.

### MR. HAWIT'S COUNTERCLAIMS

Despite this Court's Order, Hawit has asserted Counterclaims that once again challenge

the enforceability of the Credit Line Agreement's forum selection clause and concern the conduct

of Financial Services.   Mr. Hawit has included in his Counterclaims against UBS Bank the same

factual allegations contained in his Statement of Claim against Financial Services in the FINRA

arbitration.   Mr. Hawit's Counterclaims contain four Counts:

(a) The First Count requests that the court enter a declaratory judgment that the Credit

Line Agreement's forum selection clause is unenforceable.

(b) The Second Count alleges that Mr. Hawit's obligations to the Bank should be "setoff"

by his claims against UBS Financial Services, which are pending before FINRA.

(c) The Third Count alleges that the Bank has been "unjustly enriched" by UBS Financial

Services' wrongful conduct.

(d) The Fourth claims that the Credit Line Agreement is unconscionable and, therefore unenforceable.

## II.  DISCUSSION

UBS Bank has moved to dismiss these Counterclaims, arguing that Mr. Hawit has again tried to blurr the distinctions between his borrower-lender relationship with UBS Bank and his brokerage-investor relationship with UBS Financial Services, a separate and distinct entity. UBS Bank argues, primarily, that the Counterclaims are barred by this court's prior Order. Moreover, the Bank argues that even if the court's Order didn't preclude the counterclaims, each of the claims fails to state a claim upon which relief can be granted.

The court agrees with UBS Bank that the court's previous Order forecloses Mr. Hawit's Counterclaims, and the court declines to permit Mr. Hawit relitigate previously decided issues. Specifically, the court has already rejected the argument that forum selection clause in the Credit Line Agreement is unenforceable.[3]  The court has also ruled that Mr. Hawit cannot use his claims against UBS Financial Services as a setoff against the Bank's claim against him and that Mr. Hawit cannot impose liability on the Bank for UBS Financial Services' alleged conduct because the two entities are distinct.[4]  Accordingly, Mr. Hawit's obligation to repay the Bank is separate and apart from any claim he may have against UBS Financial Services.

---

[3]  Moreover, to the extent Mr. Hawit has alleged that the Bank and UBS Financial Services "conspired" to violate his "right" to arbitration, he has failed to allege a civil conspiracy claim as a matter of law.

[4]  To the extent that Mr. Hawit can prove his allegation that UBS Bank liquidated his stock in a reckless manner, he would be entitled to a setoff of any such damages.   This, however, is a defense to the Bank's deficiency claim–not an affirmative counterclaim.

In addition, to the extent Mr. Hawit seeks reconsideration of the court's previous order, the court finds no meritorious reason to do so.

### III.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff UBS Bank's Motion to Dismiss Counterclaims is GRANTED.   Mr. Hawit's Counterclaims against UBS Bank are DISMISSED with prejudice.

DATED this 23rd day of December, 2009.

BY THE COURT:

DALE A. KIMBALL
United States District Judge